Good afternoon. I appreciate everyone's patience here. We went a little long this morning, so we're getting started a little bit late this afternoon. But what we're going to do is call the case of number 5-17-0011, McIver, et al., v. American Medical Systems, et al. Counselor, are you ready? Yes. Okay. May proceed. Thank you. Good afternoon, Your Honor. May it please the Court, my name is Bill Mapp. I'm here representing American Medical Systems. By this appeal today, American Medical Systems is asking this Court to reverse the ruling of the trial court in San Francisco County, which denied AMS's motion to dismiss based on the doctrine of interstate law nonconvenience. This case presents a unique and unusual set of facts. This litigation arises out of public mesh cases, which we see a lot of advertisements on television about. It was filed as a multi-plaintiff case in St. Clair County in 2012. Seventy-five plaintiffs from 24 states, only one of which was associated with the state of Illinois or with the county of St. Clair. All others came from elsewhere around the country. Now, early in the case, on behalf of AMS, I filed a motion to sever those cases out and to dismiss those cases that were not properly venued in St. Clair County. The trial court exercised its discretion to decline that request to sever and transfer the cases. We filed a petition in this court for a three-week appeal, which was also denied.  An MDL was established in the federal courts in the Southern District of West Virginia, where many, many thousands of these public mesh cases were consolidated against my client, AMS, as well as other mesh manufacturers. And around that time, this case, the St. Clair County 75 plaintiff case, simply was agreed by both parties to be stayed or inactivated in favor of settlement negotiations in connection with this MDL. And, in fact, the only activity in this case for the last several years was the filing of dismissals as individual cases started to be settled. And ultimately, all of the 75 plaintiffs except one were settled, the one exception being Paula Conway, and I guess technically two plaintiffs, Paula and her husband Earl, who had a loss of consortium claim, Paula being from Baltimore, Maryland. And so even the lead case, the one, the sole case, that had a connection with St. Clair County would say that it was settled. So, last year, counsel of the plaintiff advised the court and us that the Conway case would not settle, or did not appear that it would settle, and they wanted to proceed to trial on that case, given the fact that having now reduced the case from 75 plaintiffs, one local Illinois plaintiff, to now one plaintiff, so only for Baltimore, Maryland, at that point, AMS filed a motion to transfer, or actually it would be a dismissal,  Counsel, and, I mean, you're addressing this, I understand what you've given us a little bit of background so far, but, you know, when I'm reading the briefs, you know, I'm troubled by the amount of time it's taken to file a motion to transfer. Can you address that? Absolutely, sir. And that's one of the reasons why I suggested this is a somewhat unique and unusual fact pattern, because typically these motions are dismissed very early in the case. But for all intents and purposes, even though this case has been on file since 2012, really nothing has happened in the case. There's been no discovery taken, no depositions taken. The case has essentially been allowed to be dormant on the part of both parties in order to allow the settling process to take place. And so even though it has, in fact, it was four years from the time that the suit was filed to the time that the convenience motion was filed, the case had not really advanced or progressed. Nothing had happened. And so procedurally, we weren't really any different than a newly filed case. And, you know, we cited two cases in our brief, which seemed to support the right to file for nonconvenience motions later in the case. Obviously, Rule 187 says it's supposed to be filed within 90 days of the date that you're required to file your answer. But we cited two cases, one Illinois Supreme Court case and one Fifth District case, in which the four nonconvenience motions were filed later because the circumstances in those cases merited doing so. And one of those cases is the Miller v. Consolidated Rail case. And in that instance, the four nonconvenience motions was filed two years into the litigation. And in that case, like this case, there had never been an order. After the initial pleadings and initial motions had been ruled on, there had never been an order by the trial court setting a deadline for filing an answer. And so the Miller court, in that case, ruled that because there was no deadline for filing an answer established by the court, that the four nonconvenience motions timely filed, they would have been filed only two years after the plaintiff's complaint was originally filed. And those are the facts here. I don't think that's contested even by the MLA. I don't think they're saying that it was untimely in terms of the rule and the 90-day rule. I think, instead, they're arguing more sort of a delay. It's not rule-based. But, likewise, I'm going to do my best to pronounce in this case. It's a plaintiff's little tug. Chochorowski, I think, is the name of the case versus Home Depot, a Fifth District 2007 case. Also, it stands to be the proposition that the four nonconvenience motions can be filed later in the case where circumstances merit. In that case, the four nonconvenience motions were filed four years into the litigation. The Fifth District, in that case, held that it was timely filing. So I understand the plaintiff relies heavily on this timeliness issue in their opposition to our motion in the trial court and now in our appeal in the appellate court. I really think timeliness is a red herring for the reasons that we've discussed. And, frankly, I think the reason why the plaintiff relies so heavily on that argument is because they really don't have a response on the merits of the four nonconvenience motions. And the fact of the matter is, this is a Baltimore, Maryland plaintiff. Or I should say two plaintiffs, husband and wife. All occurrence witnesses, fact witnesses are in Baltimore, Maryland. The 48th Plaintiff's Service is being brought before you. All the treating physicians and medical care providers are in Baltimore, Maryland. In this case, the original implantation of the health information occurred in Baltimore, Maryland at a Baltimore hospital by a Baltimore physician. There is literally no connection whatsoever between the Conway case in St. Clair County or the state of Illinois. And that's the reason why we think the case is right for dismissal based on the interstate doctrine of four nonconvenience, subject to the typical conditions of Rule 187, which are independent consent, including the refiling, which, of course, my client would do. The plaintiff has argued in their brief, and perhaps will argue again today, that this mechanism, if approved by this court and supported by this court, would somehow have a chilling effect on litigation. I frankly don't follow that argument. I don't really understand what you're saying, because the mechanism that was chosen was the plaintiff's mechanism to file a 75-plaintiff joint or case. They were not obligated to do that. They elected to file 75 cases together, including 24 cases that were unrelated to the state of Illinois. Presumably, they thought there was some tactical benefit to that. And it sounds like they've achieved that benefit, because 73 of the 75 cases have settled. So I don't think they could be heard now complaining that somehow this procedural mechanism that they chose and elected to employ of joining the states together is just somehow disadvantage. But certainly it didn't have a chilling effect on the resolution of the cases of 73 of the 75 cases. But I won't belabor this, the argument about the private versus the public interest factors. I know this court is very familiar with all of those. But the simple fact is there's no connection in this case to St. Clair County. Therefore, none of the factors, private or public, weigh in favor of keeping the case there. All of the factors, they were either neutral or they weigh heavily in favor of transfer. There's simply no reason for this case to be in St. Clair County. The plaintiffs rely, I think, primarily on the idea that the plaintiff's choice of forum should be given deference. It's clear in Illinois law that there is some deference, but it's also clear that when the plaintiff is not a resident of their chosen forum, which they are not in this case, that less deference is given to their choice. What about their argument that these products are sold in St. Clair County, in Illinois? They're advertised there, and there's a possibility that they could be bought and used in St. Clair County. If we were here on a jurisdiction motion, I think that argument might carry some weight, Your Honor. But I think because this is more of a nonconvenience motion, the analysis is limited to the specific facts of this specific plaintiff's case. And so I think that argument misses the mark. Your kind of a fennel argument is what you're giving. Essentially, yes. And, you know, as we all know, and we're certainly not arguing that this case is cold, but the U.S. Supreme Court recently ruled in the Bristol-Squibb-Meyer case, or Bristol-Meyer-Squibb, and they got that backwards, that multi-plaintiff nonresident cases of this type shouldn't be filed in cases in states where there's no connection by any particular nonresident plaintiff. That's a jurisdiction case, so we're not citing an authority in this case. But I think it certainly represents the trend of the law as it's going with these kinds of cases where, candidly, plaintiffs are manipulating local venue rules in order to take 73 plaintiffs from 24 other states and bring their cause of action in St. Clair County, hanging their head on the sole presence of one single resident plaintiff. Well, they were successful in the initial stages of this litigation, keeping the case in St. Clair County, but having that solo case in the way, I think they stand here at solely one case, and that is the Baltimore case, and that case should go back where it came from, if you will. Counsel, I understand that there was a trial setting of July 2017 in this case. Does that fact, does that play into what this Court should weigh as far as any of the factors it should consider? I don't think so for this reason. The way that we got where we are right now is that it was in early last year, or around April, May of last year, that we were advised, we being the defendants, that this one case was just not looking like it was going to settle. They were going to be forced to revoke the case. At that point in time, we appeared in front of the Court in May of last year and had a discussion with the Court, and I told the judge at that time, it's our intention, given the posture of the case, that we're going to seek transfer of this one single remaining plaintiff to Baltimore. And the judge at that time said, you're certainly free to do that. But in the meantime, I want to try, this case is four years old, I want to get it on a trial docket, so I'm going to enter an order today saying that it will be set on the trial docket by July 2017. So I don't think that the entry of that order has any independent significance. The trial court obviously has the right to manage its docket in whatever manner it wishes, but he certainly didn't say, I think your motion is untimely, or I'm not going to hear it, or I'm not going to allow you to file it. The discussion was, you go ahead and file your motion. If you want to do that, I want to get a trial sitting in this case. And again, in the interim, while we were doing all that, the parties didn't pursue any discovery other than our limited discovery related to the four non-convenient motions. So the case has not advanced towards any kind of disposition in St. Clair County. Has there been any discovery? The only discovery that's been done is interrogatories directed to the plaintiff on issues related to the formality. No depositions. No depositions, no nothing. Now, there's been separate discovery on an ongoing basis at the MDL, and that's been part of the reason why I think those cases have advanced disposition. The ripple effect, fortunately, of the MDL is that even the state court cases have kind of fallen into a settlement matrix, and that's what accounts for the fact that 73 of these 75 plaintiffs got their case to resolve, even though they weren't part of the MDL. But as we all know, having been in practice, and not me, but certainly you all serving on the bench, there's always sometimes a recalcitrant party that doesn't want something. Those cases have to be tried, and this Conway case may well be that case. But if so, we believe that Conway's going to try their case. Well, it was on a ready call. Was there a date set for the trial? Well, Your Honor, I'm not sure what you mean by a ready call. You had a pre-trial docket call of some sort. I don't know. St. Clair County's a little different than Madison, I'm sure. Well, we had a status conference in May of 2016, and it was at that time we were coming into the court and advising the court that all the plaintiffs should settle except this one couple, the Conway couple from Baltimore. And at that point, the judge said, well, this case has been on file for four years. I want to sign it at trial date. Did he sign a trial date? Yes. At that time, he entered an order saying that the case would be placed on a trial docket in July of 2017. Okay. At that time, 14 months hence. And then somewhere after that, a scheduling order was discussed and agreed upon between the parties subject to the one-month notice motion. It was mid-file. It was the court that indicated that he was going to be willing to hear once it was filed. So it was assigned, if you will, sort of an artificial trial date because of the trial court judge wanted it on a trial setting, which is understandable for the case of its age. But it certainly was no indication on anybody's part that the case was ready for trial. The expectation was that, assuming that we were unsuccessful in obtaining our relief under formal convenience, then the parties would have to get in gear and do all the things necessary to ready the case for trial, which, of course, we've been doing in Baltimore, taking depositions, et cetera. In sum, unless there are other questions, we just simply think that this is as clear-cut a case as you get for an out-of-state plaintiff who has no connection to the local venue and who all the witnesses, all the factors, public and private, would favor dismissal, in this case, in favor of re-filing, in this case in Baltimore, Maryland. And that's the relief we're asking of this court. Thank you. May it please the Court. Tate is Shaw on behalf of the plaintiff, Conway's and the Miller firm. I'm just going to respond quickly to a couple elements of counsel's argument. First, related to our claims that the motion is not timely, we do claim that it's both not timely under the letter of the law in 187 and then also under the precedent of unreasonable delay. Counsel did not mention the email that we've included in our briefing that noted that an answer would be filed 21 days after the court's order on the motion to sever and motion to dismiss on venue. That order was entered March 13, 2013, so therefore we feel that they're technically not in compliance with Rule 187 and that, as of April 2013, a motion to perform noncommunion should have been filed. If your honorable court doesn't find that that meets the technical requirements of 187, then we would say in the alternative it was unreasonable delay to be here. This was April 2013. We're now in 2017, so it's a matter of four years later that they were looking at as far as them filing this motion. I will say that the counsel's characterization of the trial date was really not fair as far as the judge kind of being willing to entertain noncommunion's arguments. The judge's judgment was set trial for July 27th and date was ready to go forward with that trial, made the parties know that we all have to be ready for that trial. So there wasn't a deference to kind of letting the MVL proceedings continue at this point. It was pretty obvious at that point that the court was ready to go, and fundamentally I think that should be a factor in the analysis as far as a public interest factor is to the circuit court judge as the ultimate controller of his own docket. So that's something that should be weighed, and the judge made pretty clear that this was ready to go to trial. How do you respond to their suggestion that you all have an agreement that nothing was going to be done with these cases while you were entertaining or working towards settlement, and that when it became obvious or at least more obvious that this case in particular would not settle, that they then move forward with their motion? Sure. First and foremost, that agreement came well after 2013. In 2013, at the time frame we're alleging their answer was due, we were still in active litigation. Most settlements really didn't come down the pipeline, I believe, until late 2014, early 2015. So they still sat on their right to bring this motion for at least a year, and then subsequently when this was found out that we were pursuing, they didn't bring the motion again at that time. They again sat on their right and only brought the motion after the judge had tried. So do you think that that was, you know, that all factors related to timing favor our arguments of unapproved delay and pure non-timing? In the meantime, the counsel, if I understand correctly, that you were involved in the settlement negotiations for a couple of years, and was it only after you reached a resolution, all these other cases other than this one, or these two partner clients, was it only after that time, I mean, what was the time difference between the sum of all these other cases, the realization that this case wasn't going to settle, and then the filing of the motion? Sure. And it's tough to give you a very straight answer on that as far as there's not complete term deadlines here. I believe that the end of 2014, which I represented, was kind of the beginning of a global agreement, and this case was part of that, and we tried to negotiate in that. But then I would say around 2016, it was apparent that that case was not proceeding in that, and that's when we again started moving for scheduling with the court. So I wouldn't say that there was maybe a two-year period in this time frame that we're looking at, but, you know, I'd say that overall we're looking at a four-year period, and there's at least two years in there where they should have brought this motion, both before in 2013 and then after in 2016 at an earlier stage. I did just want to quickly address some of the points made as far as public interest and private interest factors, if that's all right with the court. One of the things, and Your Honor, you mentioned, you know, that there is depth to the plaintiff's decision, more so if you're an Illinois plaintiff, but even without an Illinois plaintiff, there's still deference in the plaintiff's choice of forum. And then, you know, again, this is all being based on the use of discretion standard of the court, and I just can't stress that enough as far as, you know, that there needs to be deference to a trial court's decisions in weighing these issues. The deference to the plaintiff's decision is certainly at least one positive factor. Your Honor mentioned whether the fact that there were AMS-matched products sold in St. Clair County, if that's something that should be considered. We would say that's absolutely something that should be considered. Under the public interest factor of a juror, what it means to a juror, you know, the juror sitting in front of the court could have been sold the AMS-defective products that we're talking about. It was sold in that community. There were distributed representatives in St. Clair County. All those factors should weigh in as far as the juror paneling public interest factor. Lastly, I do just want to stress again as far as, you know, all this weight of the jury, the judge wanting to go forward with the trial, controlling his own docket, you know, that's a fair public interest factor that I think should weigh heavily in favor of the plaintiffs as well. And I won't go into these point by point, but just to generally say that many of the things stressed in the defendant's briefing, access to evidence, you know, it was all alleged in the hypothetical. There were no solid points of, you know, we really can't, you know, get this witness. You know, very frankly, it's probably going to be our two plaintiffs that are going to come to trial in Illinois. There's going to be no other extended family. As your Honor asked, there's been no doctor depositions that have occurred yet. Those will be recurring. There probably will be done video depositions. It's very hard to get doctors live anyways. In particular as well, you know, there's certainly subpoenas that can be issued in Illinois that then can be applied in Maryland. You know, so just I don't think that there's really any valid grounds of prejudice that have been, that counsel has affirmatively showed to court. And again, you know, those are things that I think were fundamentally needed to find an abuse of discretion in a decision such as this. Unless you all have questions, I don't have any. Thank you, counsel. Thank you. Thank you. Your Honors, if I may briefly rebut. Let me just begin by saying the suggestion that there are no other witnesses from Maryland that might testify in this case is belied by the plaintiff's own answers to interrogatories on the form of inconvenience factors. We've attached it to the record. It's page C86. An email provided to me by counsel to the plaintiff where they had given us a list of names with no addresses. I followed up and said, please provide us with addresses for these witnesses, for these treaters. In this email, they provide them 27 family and friends who are fact witnesses, according to the email from counsel for the plaintiff. All 27 are either in Maryland, or they say they don't have an address, but presumably some of them are family members. Presumably they're all in Maryland. Not in the state of Illinois, not in the county of St. Clair, not in the Midwest of the United States. Likewise, with treating physicians, in the answer to the interrogatory, they identified seven physicians, all in Baltimore, Maryland, or the surrounding area. So clearly, the witnesses the plaintiff themselves have disclosed are all in Maryland. I'm not familiar with counsel's representation in Illinois. Subpoena would somehow be effective in Maryland. That's not what I learned in law school. Maybe the rules have changed a little bit, but I don't think so. I'm somewhat surprised by counsel's characterization of what has happened in court in this case, since Mr. Shaw just entered his appearance in this case last week, presumably for purposes of presenting this oral argument. I've been in this case since it was filed in 2012. I've been physically and personally present at every court hearing. I can tell you that the way I've characterized the events that occurred in front of Judge Loveno are accurate because I was physically present when those conversations took place, and I was acting as counsel for AMS at the time. So I can assure you that the trial date signed was not done in the expression that this case will receive a trial. It was simply the court's determination that a case of this age should not be missing a trial date, and I've been understanding that and indicating his consent to our filing of the Foreign Nonconvenience Motion for his consideration. As far as the length of time between the disclosure of the fact that this case would not be settled and when the Foreign Nonconvenience Motion was filed, again, Mr. Shaw has no personal knowledge of that. I personally was involved in those discussions. I'm the guy who got the call saying this case is not going to settle, we're going to have to move forward on it, and I'm the guy who filed the motion for Foreign Nonconvenience within a few weeks after that. So those two events were directly related to one another, I assure you. This email thing, I wasn't sure they were going to continue to try to rely on us, but obviously they are, so I will address it. Apparently an email was exchanged between one of the members of the National Counsel team for AMS and one of the team members of the firm representing the plaintiff in this case, in which there was some discussion about filing of a response of pleading within 28 days after the resolution of the motion. Well, what the thing says is AMS will answer or otherwise respond subject to the parties' agreed modification of the schedule after the court's ruling. Pretty loose abuse. What Rule 187 provides is that a Foreign Nonconvenience motion will be filed no later than 90 days after the last date and allowed for the filing of that party's answer. Now, allowed seems to me by rule or by order of the court. An informal email exchange between two lawyers who are not here and to my knowledge are not even employed by the two law firms that are representing the parties constitutes a basis, a jurisdictional basis in this case. But clearly the trial court agreed and we have cited two cases, the Supreme Court and a Fifth District case that says that unless there's a quarterly establishment deadline for filing an answer that a Foreign Nonconvenience motion filed prior to such entry of an order, prior to the elapping, the expiration of 90 days after such an order is a time to file a motion. And I think that's absolutely clear from the record. So I don't believe that argument carries today. And we would again just simply ask this court to provide us the relief requested in the dismissal of this case on the condition of Rule 187 that the defendant would consent to the remand of the case in the State of California. Thank you. Thank you, Counsel. Our court will take this case under advisement and render a decision in due time. So at this point in time, the court stands and resits. We adjourn.